Bertie N. Price v. Commissioner; L. M. Price v. Commissioner.
Price v. Commissioner
Docket Nos. 16735, 16736.
United States Tax Court
1949 Tax Ct. Memo LEXIS 71; 8 T.C.M. (CCH) 865; T.C.M. (RIA) 49233; September 22, 1949
Dorothy Ann Kinney, Esq., Amarillo Bldg., Amarillo, Tex., for the petitioners. Allen T. Akin, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings were consolidated for hearing and involve deficiencies in income tax for 1944 in the amount of $20,380.56 in Docket No. 16735 and $20,355.56 in Docket No. 16736. The issue is whether respondent erred in including the amount of $11,180.35 in community income as ordinary income realized from collections on certain notes. Findings of Fact The petitioners are husband and wife, residing in Stafford, Texas. During the taxable year all their income constituted community property. Their income tax returns for 1944 were filed with the collector for the second district of Texas. For convenience, the husband will be referred *72 to as petitioner. Subsequent to 1905, petitioner and W. H. Fuqua formed a partnership under the firm name of L. M. Price and Company. Each member contributed some farming and grazing land, and thereafter about 24 sections of like land were acquired by the firm to increase its holdings to approximately 80,000 acres in 1929. Not all of the land was contiguous. Some of the tracts of land acquired by the partnership were less than a section. The partnership was engaged in the business of farming and ranching prior to and during the years 1929 and 1930. Its farming operations were conducted on a rental basis. Its ranching operations were conducted by employees hired for that purpose. The number of cattle it ran ranged from 1,000 to 5,000 head. Petitioner never lived on a ranch. He was a banker and a rancher. Prior to 1929, the partnership made no extensive sales of land. Such sales as were made were of land "scattered out" as originally purchased. Some of the sales were made to neighbors who wanted land which the partnership did not need. Prior to 1929, people were moving into the neighborhood without solicitation. Later, petitioner became interested in having people move into the *73 area. By 1929, the land of the partnership had materially increased in value from the time of its purchase. In that year the partnership had not paid for all of its land. It then owed a total of about $750,000 to a considerable number of people, and its financial condition was not good. Some of its creditors were asking for payment of part of their claims. In 1929, the partnership endeavored to sell a great deal of its land in order to raise money with which to pay the claims which were being pressed. In that year it sold about 50 tracts for farming and ranching. At least one sale was made in 1930. None of the land was sold to tenants of the partnership. The sales were generally made on terms providing for an initial payment of one-fourth of the purchase price, with the balance evidenced by long-term vendor's lien notes. For tax purposes the partnership treated the sales as deferred payment sales. The partnership was terminated in 1937. In the distribution of its assets at that time, petitioner received a one-half interest in the long-term notes acquired by the partnership in connection with sales of land made in 1929 and 1930. Few collections were made on notes until about 1940. *74 Collections were made on certain of the notes in 1944 in excess of their bases. In their returns for 1944 no amount was reported by petitioners as income received from the collections made on the notes. In his determination of the deficiencies, respondent increased income by $11,180.35 for collections made on the notes, as follows: Unre-
Profit
Payments
covered
Realized
Purchased
Received
Sale
Number
Cost
1944 Col-
by
in 1944
1929
1930
1-1-1944
lections
Partnership
J. H. Atha
$ 1,680.00
48
$ 1,680.00
Carl Bremer
3,500.00
7
$2,146.80
1,353.20
April 15, 1929
J. P. Cameron
1,950.00
25
1,950.00
1914-1922
A. C. Witt (L. L. Lance)
1,160.00
43
1,160.00
1917
Vern L. Reynolds
601.40
2
601.40
J. K. Richardson
3,044.72
20
2,064.72
980.00
1917
J. W. Scott
3,029.00
28
1,150.75
1,878.25
1925, 1926
A. C. Witt
665.00
24
497.50
167.50
1917, 1918
A. C. Witt
750.00
27
750.00
1919
A. C. Witt
660.00
34
660.00
1917, 1918
Totals
$17,040.12
$5,859.77
$11,180.35
As reported on
the returns
None
Increase to
income
$11,180.35
*75 The land sold to J. P. Cameron, Carl Bremer, J. K. Richardson, and the last three listed sales to A. C. Witt, was bought for ranching or grazing and so used until it was sold by the partnership. The land involved in sale No. 43 was purchased for farming but was not used for that purpose because it was in excess of the needs of the farming operations of the partnership. In 1944, petitioner collected $1,470 on his interest in the notes given by J. K. Richardson in connection with the purchase of land from the partnership, and $1,574.72, a total of $3,044.72, on a note not connected with the purchase of land. Petitioner collected $1,950 in 1944 on the note given by J. P. Cameron. The land sold by the partnership in 1929 and 1930 constituted property held by it primarily for sale to customers in the ordinary course of its trade or business. Opinion Petitioners concede on brief that the collections, amounting to $2,281.40, on the notes of J. H. Atha and Vern L. Reynolds, are taxable as short-term gains. The primary difference between the parties on the remaining notes is whether collections in excess of the bases are taxable as ordinary income, as determined by the respondent, *76 or as long-term capital gain, as contended by petitioners. Section 117(a)(1) of the Code provides, in part, that the term "capital assets" does not include "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * * or real property used in the trade or business of the taxpayer." Subsection (g)(1) defines the latter terms as meaning, among other things, "real property used in the trade or business, held for more than six months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The parties agree that the status of the notes in the hands of the petitioner is the same as it would be if the partnership had still owned them in 1944, and respondent concedes that the notes were held by petitioner for more than six months. They differ on whether the real estate, in connection with the sales of which the notes were given, was held by the partnership primarily for sale to customers in the ordinary course of its business. The question is an issue of fact and the burden was on petitioners to show that the property was not held primarily for sale in *77 the ordinary course of a trade or business. Greene v. Commissioner, 141 Fed. (2d) 645, Commissioner v. Boeing, 106 Fed. (2d) 305. Whether the sales were made in a trade or business depends upon the situation in 1929 and 1930, when the sales in question here were made. Phipps v. Commissioner, 54 Fed. (2d) 471. In Snell v. Commissioner, 97 Fed. (2d) 891, the court said that the term business "implies that one is kept more or less busy, that the activity is an occupation" and involves a degree of continuity. In the Greene case, supra, the court said that the petitioners therein had the burden of showing that the property was held primarily for investment rather than primarily for resale. In the Boeing case, supra, and Ehrman v. Commissioner, 120 Fed. (2d) 607, the court referred to the extent of the activities as having an important bearing on the question. The court in Harriss v. Commissioner, 143 Fed. (2d) 279, said that "Whether property is purchased for sale in the course of business or for investment depends upon the number and the proximity of the purchases and sales to one another." Carrying on business, *78 it was said in Fahs v. Crawford, 161 Fed. (2d) 315, "implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity." It is evident from the facts that the partnership was not at any time, from its organization in about 1905 to 1929, engaged in the real estate business. Such sales as it made of land during that period were of "scattered out" tracts, as the witness described it, which were desired by owners of adjoining land and unneeded in the farming and grazing business of the partnership. The isolated sales prior to 1929 under these circumstances did not amount to a trade or business. After reviewing the evidence adduced in this case we come to the conclusion that the petitioners have not met their burden. The evidence amounts to this: That the land, about 80,000 acres, was purchased for purpose of ranching and farming; that it was so held for a considerable number of years and used for that purpose; that in 1929, 50 tracts were sold and in 1930 at least one tract, all in order to raise money; that the partnership owed about $750,000, its financial condition was not good, and some creditors were asking *79 for payment of part of their claims. The purpose for which the land was acquired originally is not determinative; the question is: For what purpose was it primarily held in 1929 and 1930, i.e., was it then held primarily for sale to customers in the ordinary course of petitioners' trade or business, under the statute, Richards v. Commissioner, 81 Fed. (2d) 369; and the fact that property was being liquidated in the sense that petitioner was trying to raise money, is not determinative that a real estate business was not being carried on. Ehrman v. Commissioner, supra; Richards v. Commissioner, supra.It is obvious, we think, that for all we know from this record petitioner may actually have been engaged in the business of selling real estate, in the disposition of the tracts. Fifty were sold in 1929 and the petitioners have not shown how many were sold in 1930. The number might have been even greater than in 1929. The amount of sales does not appear, nor the amount of claims being pressed. Petitioner may have set up an office, a manager and bookkeeper, and may have advertised himself as being in the real estate business; nothing in this record *80 negatives such an idea. He may have subdivided the tracts, as formerly held, for purpose of sale. The fact that the sales were generally made on terms of one-fourth of the purchase price as a down payment tends to negative the idea that cash was being sought with which to pay off debts; for there is no indication that larger amounts of cash could not have been obtained if desired. Except that one purchase appears in 1929, there is no evidence as to whether purchases of land were being made during the period when the sales were made. Such a condition would indicate a real estate business. A conclusion on the record before us that the property sold was not property primarily held for sale to customers in the ordinary course of trade or business, within section 117 of the Internal Revenue Code, would be based upon conjecture and not evidence. We hold that the petitioners have not shown that the property sold was not so held. Petitioners contend that the gain computed by the respondent was overstated by $980 in the case of the J. K. Richardson note and $170 in the case of the note given by J. P. Cameron. The proof here is that only $1,470 was collected by the *81 petitioner on the Richardson note, an amount less than unrecovered cost. The remaining amount included as gain by the respondent was collected on a note not connected with the sale of land by the partnership. Under the circumstances, it is clear that no gain was realized by petitioners on this note. Concerning the Cameron note, respondent determined that petitioner had recovered his basis prior to 1944, and, therefore, included in income as gain the total collections amounting to $1,950 Petitioners contend that they had an unrecovered cost basis in the note of $170, and, accordingly, respondent overstated the gain by that amount. Petitioner's basis in the note was "such part of the basis in his hands of his partnership interest as is properly allocable to such property." Section 113(a)(13), Internal Revenue Code. The evidence presented by the petitioners is no more than that their books show collections to 1944 of $170 less than cost shown therein. No evidence was offered to establish whether the book cost was computed in accordance with the requirements of the statute. Under the circumstances, we can not say that respondent's determination is wrong. Decisions *82 will be entered under Rule 50.